Good morning. Good morning your honors and may it please the court. My name is Mark Silver and I represent Miguel and Barbara Avila. I would like to reserve approximately three minutes for rebuttal time and I'll make sure to watch the clock on that. This case tests the mantra that every public school child is entitled to a free and appropriate public education. There are three main issues in this case. First, did the district court correctly calculate the and finally did any deficiencies in the 2010 re-evaluation deprive the child of a free and appropriate public education. First, although the district tries its best to muddy the analysis, the statute of limitations analysis error is actually fairly straightforward. The district court applied a flat two year analysis. The complaint was filed in April 26, 2010, two years before barred by the statute of limitations. The problem with that is that's not what the Washington statute nor the federal statute of limitations states. So I guess the question is what did the school district know or what should it have known in 2008 based on the information then before it? We would argue that the correct analysis here would be more focused on the parents. What did the parents know or should have known? And the district focuses on the date that the misdiagnosis occurred or what we would contend was a misdiagnosis in 2007, the date that it went to the, that it was passed on to the parents. Wait, wait, wait. Misdiagnosis, you're losing me there because the district court doesn't diagnose. Sorry, sorry, for autism. Sorry, not the misdiagnosis, just the failure to evaluate for autism in 2007. I'm very sorry. I didn't mean to use the word. Your position is failure to evaluate and then there's the subsequent decision that he wasn't eligible for services. So can you just be clear about which one you're referring to? I'm referring to the autism, both of them. And the district court ruled that both of them were barred by the statute of limitations. So let's, because we're in a kind of a different world now talking about statute of limitations, and of course they have counsel. So let me just start. Did they take a position before as to the, what the date should be? Or they were going down the occurrence route also? No. Again, the parents were proceeding pro se. I understand. They did not explicitly take a position on what the new or should have known date was. However, they did argue that all of the violation, or all of the alleged violations were within the statute of limitations. Okay, so now we have, now we have a, assuming we agree with you on the discovery rule, have they taken a position now as to what that date would be? Or do you think that there needs to be a district court finding? We believe that there needs to be a district court finding. That's an extremely fact-intensive analysis. The district court nor the ALJ was focused on that question at all. And what facts would you adduce if we remanded this for a hearing on that question? The facts adduced would be, when did the parents realize that the child was injured by the... I understand that's the nature of the inquiry. I'm asking for specific facts. I'm still waiting for an answer to my question. So, I'm sorry. What did the, parents or the school district know and when did they know it? So, one of the key dates that really wasn't a focus below, but that we would kind of, if there was more factual development below, would be the December 2008 date when the district determined that the student was eligible for special education services. You and I seem to be miscommunicating here. I just want some help here understanding what evidence was before either the district court that should have given rise to discovery of autism. What do we have? That the school district should have? Either. Just tell me some facts here. What are you gonna prove if we send this back for a hearing so that I can conclude that as of December of 2008, somebody knew or should have known that this child had autism and therefore needed services to address it? And I'm very sorry, we were miscommunicating. I was asking a very articulate question, but you now understand? Yes, I do. Okay. What's your answer? The very first school psychologist that evaluated this child in, I believe it was 2006, stated that the reason for referral for special education students was suspected autism. That was written on the evaluation, suspected autism. This child was then evaluated. And that was when? I believe that was in 2006. That was when the parents originally requested this evaluation. It was referred to the school district, and it is undisputed that they did not evaluate him for autism. A few months later... What happened? Was he seen at all by anybody? Yeah, he was seen at all, and he was... By who? He was seen by a school psychologist, and he was evaluated generally for general learning defects. Well, and behaviors of concern. When you say it's undisputed that he was not tested for autism, I think the school district's getting ready to stand up and contest that counsel. They certainly do in the briefing, right? So that's not particularly helpful. I understand your statute of limitations argument vis-a-vis Judge Tallman's question, but it's disputed what he was tested for, right? The district takes that position now, but below they stated explicitly their witnesses testified at the ALJ hearing that they did not evaluate him for autism. And going back to your question directly, a few months later the parents paid for their own doctor to evaluate this child, and he was evaluated and found to suffer from autism. But of course, if you're talking about statute of limitations, then you know that they goofed up. I mean, if you take... At that point, which is way before... So I think the question, maybe a different way to phrase it is, are there any facts after April of 2008 that would fall into this additional facts by which they knew or should have known? So really quickly, just to back up a tiny bit, it would only be 14 days difference. So it was two years and 14 days from the time that the school district was notified that... Sorry, that the parents were notified that he was going to be reclassified for autism. So October 26th, the independent third party physician diagnosed GA with Asperger's syndrome. Yes. Okay. Then on the record that we have, it says fall of 2007, the district determined he was eligible for accommodations under 504. Yes. So that would have been... I don't have the exact date, but I think it was around December of 2008. December 12th, 2007, the parents requested the second evaluation, the child find referral, right? December 17th, the parents met with the district to develop the 504 accommodation plan. It's to April 14th, where the school psychologist issues the second evaluation and says he's eligible for services for autism, right? Yes. So the 14 days... I'm sorry, but your time's ticking, so I'm trying to just get there. The 14 days is from... Sorry, I misspoke. It was 12 days. So April 14th, 2008 to April 26th, 2010. So that would be two years and 12 days. So really the... Okay. So this is the date you think the clock started? No, Your Honor. I'm just saying that is an argument that could have been made below, but we would say that that was not the critical date. Counsel, when did the clock start? Again, that's a very fact intensive issue, but if we were below, we would argue it started around December of 2008. That's the date that the parents realized... That's the date that they put out a new IEP, and the parents realized initially that he had been harmed by the failure to evaluate him for autism in 2006 and 2007. Alright. Again, the critical date is not the date of the misdiagnosis or the date that they did not evaluate him for autism. It's the date of the critical injury. I've got a quick... Let me go back. You represented that the school psychologist suspected autism in 2006. I believe her name was evaluated by a school psychologist based on behavior concerns. Yes. But as I read the record, the school psychologist thought because of his age... We need to sort of see how he develops a little further here because the behavior might be typical. What was he then? Three and a half or something? Yeah, I believe he was about... It might not be autism at all, but we'll keep an eye on him and check him again. And then you say a few months later, the parents paid for their own doctor who gave them an express diagnosis of autism. It would have been October 2007, Dr. Christy Rice. Okay, and did the parents give... I'm sorry, Dr. Christy? Dr. Christy Rice. Okay, did the parents give Dr. Rice's diagnosis to the school district at that time? I believe that the record shows that they did. That they did. What, if anything, did the school on April 14th of 2018 evaluated him for autism and then found that he did qualify for services at that time. But again, we would argue at the district court below, because again, this determination was not looked at at all, that the parents still did not realize that this child was injured by the possibility that he was not originally evaluated for autism. But I guess going back to the discovery rule, my concern is what more did the parents need to know in 2007 or 2008 that wouldn't start the running of the statute of limitations? Absolutely. They needed to know that the IEP was going to be different, that the student was going to get additional services. They did not know that until around December of 2008. Just because you're evaluated for and found eligible for special education services for an additional diagnosis or an additional disability does not necessarily mean that the plan for the child would have changed. So there may be evidence... Aren't the parents involved? These parents, it looks to me, were very actively involved in interacting with the school district. So I guess at what point do we say the parents are sort of charged with responsibility of seeing to it, at least saying to the school district, look, my child has autism. What are we going to do to address that? First, I would say they did. And second, I would say the precise date. Again, we're talking about days here. We're talking about two years, 14 days. But if you miss counsel, if you miss it by 14 days, you miss it by 14 days. I mean, a statute of limitation means... I totally agree. I just, our position would be that the district court clearly misapplied the statute of limitations and that it needs to be remanded back. There may be evidence that these parents... Well, I'm not so sure if it truly is two years and change, then the district court properly applied the statute of limitation, did it not? You're correct, Your Honor. The district court would have applied the wrong analysis by not starting with the new or should have known date. The key determination for the first prong is the new or should have known date. The district did not, the district court did not even attempt to... And the child went into the ADAPT program when? In... The ADAPT program would have been in late 2008, around December of 2008. Counsel, in December of 2007, he went into the BEST program because of the Asperger's, the third-party diagnosis for Asperger's. It doesn't say in your briefing, but I've been trying to figure out, is it your position that there's a difference, a significant difference between BEST and ADAPT? So if you'd had the diagnosis earlier, he shouldn't have been in BEST, he should have been in ADAPT? Yeah, that would have been a Section 504 program, and yes, there would have been... And that's shown by, in December of 2008, there were additional steps that were taken to take different steps with this child. So is that part of what has to happen on remand? Is that your view? The district court would have to determine... Yes, that is correct. There was a harm there? Yes. I don't think we've got what we need in our record to know whether there was or not. That is exactly our position, Your Honor. That this court just clarified quickly the standard, the newer should-have-known date, and remand back. The district court judge held a one-day evidentiary hearing. The ALJ held an eight-day. So they are, we believe, fully competent to make this determination on the first instance. So you think the evidence is in the record, we just need some factual findings on the basis of what's there? No, we... Well, maybe factual findings, and additionally, there may be more evidence needed as to the precise differences for the school psychologist to testify as to the exact differences between the BEST program and the ADAPTS program, and just see what was the date when the parents knew or should-have-known of the harm to the child. Counsel, I'm going to ask you to shift gears again because your clock is ticking. There's another argument about whether he was tested for dyslexia and dysgraphia, and it's really hard for me to see any difference between the tests administered privately and the tests administered by the school. What testing do The testing that they missed is the parents specifically requested numerous times for neurological testing. Dyslexia and dysgraphia specifically are neurological disabilities that affect, of course, reading and writing. The school district said that they didn't do these precise sub-tests. There are two sub-tests that are for dyslexia and dysgraphia in the WIAT-II test. They stated that they didn't do that because, in their opinion, students normally don't suffer from autism and dyslexia and dysgraphia. Now, Dr. Pat Sharp in 2012 used some additional sub-tests and found that he was suffering from dyslexia and dysgraphia, and outlined, I believe, it was 12 specific steps that should be taken for this child. So, again, the school district states, we did some broad testing, some general testing as to reading and writing, but this is really, they've admitted below, before this litigation, they don't even test for dyslexia, sorry, they don't have any training for dyslexia. Well, but I thought they said that they actually train or test for deficiencies in writing skills and, I mean, they don't call it that, but they're testing for the same thing. Isn't that what they're saying? That is their argument, and while they may be testing for some of the different writing portions or some of the different reading and comprehension portions, again, dyslexia and dysgraphia are very specific disorders that, and there are specific tests that the school district should have given. But, counsel, just to be very specific, the school district said it does evaluate students suspected of having specific learning disability as defined in 34 CFR 300.810I. I know you know that, and one of those disabilities is dyslexia. That is, that is in the sentence after, in an open, are you referring to the open record? I'm referring to the second sentence you don't want us to refer to. The first sentence is that the Spokane Public Schools have not evaluated any students for dyslexia from July 1, 2005 to date. The district does evaluate students suspected of having a specific learning disability as defined in the reg I just mentioned, and my understanding is, well, I know, the reg includes dyslexia, so can you help me, what are they missing? What they are missing is that they used their subjective beliefs that this student was not suffering from dyslexia to toss aside those tests. And the tests, can you just tell me, what tests did they need to administer? There were two tests in the Wyatt, three tests that they, I will, I can, oh, page 27 of the May 17, 2003 ALJ testimony, and that was on the remand back from the district court. I'm going to go look at this. Page 27 of the what? Of the May 17, 2003 ALJ hearing. Okay. And that's where there was testimony about tests specific to dyslexia, and I would also turn the court to Dr. Sharpe's 2012 analysis that the district court received and actually remanded back for an additional evidentiary hearing. Thank you. I'm sorry, I realize I'm over time. Okay. Good morning, Your Honors. Greg Stevens, First Spokane School District. A couple things. I think it's a misrepresentation to say that the initial referral of the student was for autism. It is true that the referral filled out by the parent did say that a preschool teacher, private preschool teacher, wondered whether the student was suffering slight signs of autism. And the record is clear that the district did assess for autism. There's some perhaps unfortunate distinctions that the school district staff make between a diagnosis, which they do not do, and an educational assessment for educational. Just to be clear, it is not the district's position, is it, that this child didn't need to be assessed for autism, given that that was a concern? Correct. That is not the district's position. So we don't need to get into that? Correct. They assessed. I'm understanding your position is that he was assessed for autism in kindergarten. Is that, do I have that wrong? You do not, Your Honor. The district's position is they did assess for autism. They did. The record is clear that the school district did three different assessments in the social adaptive area. And, of course, an essential feature of autism is, pardon me, is deficits in the social adaptive area. The district also did a communication speech assessment. Is the, I'm sorry, communications what? Communication and speech assessment, which is also an essential feature of Asperger's or autism. Did the district get the statute of limitations standard correct? Well, Your Honor, I think when you look at the record, what is very, very clear is that the only statute of limitations appeal that the parents made was as to the two exceptions. So naturally. But if it's a matter of law, as a matter of law, do you agree that the standard should be new or should have known rather than occurrence-based standard? Yes, Your Honor. And if you go into new or should have known, you don't get into the exceptions, correct? Well, you could have a new or should have known date, and then the exceptions would toll the statute of limitations. So perhaps an example, let's say on December 1. But you need a new or should have known date. And the difficulty I have here, and I recognize that they, you know, they were not represented below. The difficulty I have is whether the district court actually made a new or should have known finding in the construct of a discovery rule as opposed to an occurrence rule. And that seems to me to be what's missing here. Sure. Although the district school district would argue that if that was not an issue appealed by the parents, one might not expect the district court to address an issue that was not raised by the appellants. When you look at the issues that the district court established, which were not objected to by the parents, when you look at the parents' briefing, when you look at their amended complaint, their sole focus was on the two exceptions to the statute of limitations. And so that is what the district court did address. Well, I think that one of the reasons for that is that everyone was starting from the discovery rule versus the occurrence rule. I mean, it seems to me that if I look in the record, and my question would be, is there some way we can define divine under the discovery rule when the new or should have known date was? Now, the Avila's counsel didn't offer us much in the way of facts. But I also don't know that if we should be the ones actually determining that as opposed to a remand. So what would be your position on a remand so that the district court could make a determination as to what that date was specifically under the discovery rule? Sure. Well, obviously, before the administrative law judge and before the district court, there were many, many issues. But it seems like the crux of the issues before the current statute of limitations was, did the district err or create a violation by not assessing, finding the student qualified earlier back in December of 2006? The district would suggest that the record is clear and replete with evidence that the parents were involved every step of the way. The referral was made by the parents. That isn't answering my question. And that may be the case, that, in fact, the new or should have known date actually goes back in time, given the history of the private diagnosis, the back and forth, and all those things. My question was really more precisely to why shouldn't we remand this and let the district court make a clear finding on the new or should have known date in the appropriate construct of a discovery rule? Well, the district would suggest, Your Honor, two reasons. One, the district would suggest that the record is so clear that we would ask this court to make a finding based on the record before you, which we think you can do that, as to a new or should know date. But, of course, we don't really make findings. We're told that quite a bit. When we try to. We like to find things, but they're told that we're not supposed to find things. We're supposed to only rule on the legal question. So what would be your second reason? One that I've already stated, Your Honor, that the new or should have known date, that it was the parent's burden to appeal the administrative law judge's ruling. Administrative law judge ruled statute of limitations was cut off as of April 2008. It was the parent's burden. And in terms of the equitable arguments, I understand they're a pro se, but they also were applied or provided with an attorney, Northwest Justice Project, whom they fired. In any event, the parents did not appeal that. They only appealed the exceptions. They appealed eight separate exceptions. The district court addressed every one of those. Let me just ask you, that's basically a waiver argument, correct? Yes. And where is that in your brief? It is not in our brief, Your Honor. That's what I thought. That's what I was looking for, but that's not in your brief. So did you waive the waiver argument? I don't think so, Your Honor. I think it was their obligation to do it. I mean, honestly, we read their opening brief and responded to those issues, perhaps made the error of letting them frame the issues. And then we saw their reply brief and we're going, why? What's going on here?  New or should have known date was never an issue for the district court. Also, it's ticklish because the exceptions are withholding or misrepresentation. And we have other case law, the AG case, for example, that talks about where there's really specific expertise that's required. That really factors into the new or should have known. And we're talking about whether a little guy in kindergarten did or did not get the right kind of testing that could have caught autism, which in and of itself is, of course, a spectrum disorder. It's a ticklish issue. So it seems to me to be laden with factual questions about at what point would a reasonable parent have known? At what point were there specific signs for this, you know, in this case regarding this child? So your question, Your Honor, is just that it's very fact specific? My point is, and maybe it isn't a question, but I want to give you an opportunity. You've conceded that what they appealed was misrepresentation or withholding, the two exceptions. And it seems to me that those wrap in, those encompass the very problem that we're talking about. I don't think so, Your Honor, when you look at these specific misrepresentations and exceptions. I mean, those are clearly exceptions where the parents would know of the crucial facts leading to their claim. But for policy reasons, Congress has determined we're going to toll the statute of limitations, for example, on the misrepresenting. It's misrepresenting that the school district solved the problem. So the parents may know of the crucial facts here, but the district has said, well, don't worry, we've solved that. So that's an exception to the new or should have done. And their point in this case is that the school district has taken the position, and in fact is taking it today, it's your position consistently, that we did test him for autism. So if the parents are told that from the school district, it's pretty tough, right? We didn't know because you told us you did test him for autism. And in fact, the correct type of testing was not done. That's their view. Well, Your Honor, in this case, the parents were apprised of every step of the way of the district's assessments, what they did. They were provided a copy of the evaluation. They were at the meeting. So if they can avoid the statute of limitations by saying, well, we didn't know. But counsel, it's not quite that simple, right? And I'm just trying to play devil's advocate, not trying to take a side here. But what they know is they come to an IEP meeting, or whichever type of meeting, it doesn't matter. They were very involved, as Judge Tallman indicated. And they were told from the district, we've administered this battery of tests, these different types of tests, which look like alphabets to a layperson. And we have tested this child for autism. So their position is, in terms of new or should have known, how were we to know the district wasn't applying the appropriate test? How is a layperson supposed to know that? That is what I'm getting at. It strikes me as very fact-intensive inquiry. Certainly, Your Honor. I guess I would restate my position that if, at what point would the parents know? Would it be when they've employed an expert? Boy, that's a tough standard. That almost eviscerates the statute of limitations. And of course, the newer discovery rule requires that the party engage in due diligence. That if they have suspicions, they're obligated to pursue that and ask questions. So given the fact that the parent wrote in the referral a suspicion of autism, I think it's fair to say, well, then at the evaluation meeting, one might expect the parents to ask, did you district test for autism? Sounds like if they'd asked the question, the district would have said yes, because the district's position is that they did test for autism. Correct, Your Honor. Could you address the dyslexia dysgraphia testing for me? I'm having difficulty because the district does have this response, I think to a FOIA request, saying we have not evaluated any students for dyslexia from July 1, 2005 to date, and then goes on to say we do evaluate students for specific learning disabilities. They say you didn't do the right kind of testing for dyslexia dysgraphia. I would suspect, Your Honor, that I believe it was page 27 of the transcript will not support the arguments the parent is making. But yes, it really gets into semantics. If you look at the definition of dyslexia, including the definition provided by the parent's experts, it's a general reading disability, which could include fluency, could include reading comprehension. The district did a number of tests. I have them listed here in my outline. Go over them. For all of those issues, reading fluency, decoding skills, comprehension, all of those skills were assessed by the district. Indeed, the IEP provided services in those areas. Yes, some district staff view dyslexia as more of a medical, clinical term, and it's not one they use because of the different ways that people interpret it. I think the record is clear. The district did assess for it. Does the record tell us, or maybe you can point to where the record might explain whether there's a difference between the ADAPT program and the BEST program? Yes. Thank you, Your Honor. Perhaps some confusion in the record. The BEST program is not a school district program. It's not affiliated with the district. Thank you. Yes. Yes. Don't know how important it is. There was some discussion of the original diagnosis of the student by Dr. Rice. I believe the record will reflect that this diagnosis was provided to the parents on October 19, 2007, and then the parents provided that to the school district and made a referral on December 12, 2007, so approximately three months later. The parents also made an argument that the district did not test for dysgraphia because the district used a scribe in some of its assessments. I think that's a misrepresentation of the record. If you look at the exhibits, yes, the district did use a scribe to test the students' limits in some aspects of reading a written expression. One of those was sentence combining, where the test is the student is given two short sentences. Frank has a sister named Anne. Anne is six years old, and then the student is to combine that. And yes, to test limits, the school district provided a scribe, but the assessments are very clear by the occupational therapist that the student's actual fine motor mechanical handwriting was tested extensively. There was also standardized testing given on copying shapes. The student's tripod grasp of a pencil was tested. And that would be Exhibit A-15, the evaluation by the occupational therapist. The school psychologist also did testing in having the student, given the student a piece of paper, 30 seconds, write as many letters of the alphabet as you can. So, again, focusing on the mechanical fine motor skills of writing. I believe my time's about up. Thank you. We've taken quite a bit of your time. I'll give you a minute for rebuttal. Maybe you want to address a question that's lurking here, and that is the fact that this newer and should have known was never really raised and never really argued. So, obviously, now it's argued for the first time in the appellate brief. We would first say that the district obviously didn't raise that second while the parents. Whoa, whoa. You're the appellant. That's a question directed at you, counsel. Fair enough. We would say that the parents did adequately raise this enough. They extensively went through the statute of limitations analysis. While they may not have explicitly hammered on the new or should have known date, they did say all of our claims are within the statute of limitations. In fact, if you go back and review their briefs, that was pretty ad nauseum. There were multiple pages of statute of limitations analysis, and to hold them to pro se parties to that kind of standard, we believe would not be appropriate here. I would also like to quickly address, the parents were told numerous times that in 2006, he was evaluated for autism. He was. I would direct this court to the record excerpt 131. That is the government witness saying, and I quote, I did not do a professional autism evaluation, no. And who said that? That is, I'm sorry, I have this on the other page. That was the school's witness. I believe it was Corey Valley for the school district, but that was the school district's expert. And again, that is page 127 of the transcript, part eight, record excerpt 131. My second argument very quickly is that, and this goes to the points that were made earlier, the parents were told numerous times, this school district does not evaluate for dyslexia and dysgraphia. This school district does not evaluate for dyslexia. The problem, it really is a semantics argument. If they test for the symptoms of those two diagnoses, doesn't that satisfy the regulatory standard? It does not. Because there are specific techniques that are utilized based on whether it's a neurological disorder, based on whether it's a motor disorder, different techniques are utilized to best address the child. There's no. But as I understood the record, the school district's witnesses were saying, we test for, in essence, the results that flow from a diagnosis of dyslexia or dysgraphia. We just don't use those terms. So I'm trying to figure out where's the beef here in your argument. Two responses to that. First, that is their new argument. Before this litigation occurred, they continuously told the parents, we do not test for this. We believe we adequately addressed it. We don't believe that he suffers from any sort of similar disorder because he suffers from autism. That's very clear in the record that these school experts did not believe that he had these types of neurological disorders, even some of these similar symptoms, and that they all addressed it. They believed that all of this was because of his autism. Well, let me put it a different way. Is there evidence in the record offered by the parents that the tests that the district administered would not have been adequate to confirm a diagnosis of dyslexia or dysgraphia? I believe that the best evidence in the record is the 2012 evaluation that found that he suffered from dyslexia and dysgraphia, when the district would have contended below that he wouldn't have suffered from these. I'm not sure that answers my question, but I've had this problem before, so I guess we'll just leave it. Thank you. Thank both counsel for your argument. The case just argued is submitted and we're adjourned for the day.
judges: McKeown, Tallman, Christen